Please call the next case. Thank you. Counsel, you may proceed. Thank you, Your Honor. May it please the court, Stephen Plotkin on behalf of the plaintiff, Demetrius Triplett. Defendant's interpretation and application of the against-the-manifest way to the evidence standard is incomplete and contrary to governing law. Defendant focuses in on whether there was some sufficient evidence to support the agency's determination. If the court were to find that some evidence supported a factual determination made by the agency, the commission, then because the reviewing court cannot reweigh the evidence, determine conflicts, resolve conflicts, and substitute its determination for the determination of the agency, the agency decision is then affirmed, and effectively, it becomes, the court review becomes a rubber stamp of the agency proceedings. The reason for that is that the only situation that comes to mind is if the agency, the commission makes a determination and there's no evidence to support the agency's factual determination, then the reviewing court could overturn that decision. But that's not what the law is. And the Illinois Supreme Court in Wade and the appellate court in Boland have set forth the scope and limits of what the against-the-manifest way to the evidence standard is. And those principles include the principle that deference to the agency determination is not boundless or limitless. The agency can have its determination overturned even though it heard witnesses, reviewed records, and made findings. You're all correct. When an opposite conclusion is clearly apparent, it's the conclusion drawn by the commission. That's where we're getting at. That's what you have to convince us. Why in this case is an opposite conclusion clearly apparent? Well, the commission did not look at, did not consider all of the evidence. And that is what's apparent in this case is that the agency's decision is basically based on the report from the IME, Dr. Singh, and a couple of extraneous other comments that I'd like to address. The focus gets four pages, effectively, out of the more than 200-plus pages of medical records that have been supplied in the course of various treating doctors who saw a plaintiff over a six-month or longer period, who administered various tests, saw him multiple times on clinical examinations, and came to the conclusion that he had suffered a work-related injury and that they were dealing with trying to treat him for that work-related injury. Right, there's a bit of a conflicting medical opinion. You have medical opinion on your side. The commission, let's hone in on Singh. The commission liked Singh's opinion, and they said they noted the details underlying his medical opinions. They were impressed by that. So tell us what was wrong with Singh's opinion. Singh's opinion is wrong because, number one, the fundamental problem is that he used, he evaluated and discarded the MRI and the EMG on the basis of concluding that Mr. Triplett displayed positive Waddell signs during the course of his one-time examination that likely lasted less than an hour. Now, he did examine the claimant, did he not? He did. Not all the other experts examined the claimant, did they? No, everybody else examined him. Everybody else not only examined him, but treated him in one respect or another. Now, Singh said he did also review the MRI and the other objective diagnostic testing, did he not? Yes, he says that, but what he ends up doing is finding that the presence, the existence of positive Waddell signs was an indication of symptom manifestation, magnification and possible malingering. And the review, in our brief, we referred to a study that was done by Michigan State that concluded that it's inappropriate to use positive Waddell signs as evidence of malingering credibility, symptom magnification and things of that sort. Is there any Illinois authority that would require us to arrive at that conclusion as well? I don't remember the cases that I cited that came from various federal courts that have looked at it. I don't think any of them were Illinois federal courts. But it's clear that the purpose of the Waddell signs testing by Waddell was to determine whether there was a psychogenic or a non-organic to this false theory that it was reflective of malingering and therefore lack of credibility. I point out also that even Dr. Singh, so Dr. Singh finds that there's symptom magnification. Because of that, he effectively discredits the EMG as being a false positive. And then he reads the MRI in a way that the, to minimize the extent of severity of what the MRI findings were. So you're saying in effect that Dr. Singh was looking through a lens that was tainted and therefore that undermines the weight that should be given to his opinion? That's correct. The whole foundation for his opinion is built on a faulty assumption as to what the purpose or what the conclusion should be reached. Having come to a finding that, having come to a conclusion that there was a presence of positive Waddell signs. In contrast... I have a question just since we're into theoretical aspects here, that you're bringing up the Waddell test, so to speak. Would that be appropriate to call that? Waddell test? Test findings, I'm not sure. Test findings? Yes. And you're saying the genesis of that was to look at organic versus psychogenic experience of pain? Yes. Okay. And your theory is that pain, whatever its origin, is still pain. That's correct. He then, as is evidenced by... So the fact that he might have positive psychogenic experience of pain does not negate the debilitating nature of the pain. That's correct. There's not a... Pain is not exclusively organic in nature. How do you measure organic? I... No, I'm asking the question. I mean, I'm serious about this question. Is there an objective, organic measurement or metric? Well, the metric is a recordation of pain. I don't know the answer to that. I think that there's probably lots of ways in which pain can be measured. You do? Organic pain? We measure blood pressure. We have a machine to do that. That's correct. But you can't put a thermometer in somebody's mouth or any other kind of device that comes out with a specific... Pain level. Pain level, exactly. Well, that just negates what was your earlier statement when I said you do. There is no metric. Is there for organic pain or measurement for organic pain other than what? Oh, self-reporting. Well, that's part of it. I mean, part of it also... Could be observational? Clinical testing, observation by professionals, other types of objective testing. What do they know? What is their basis for that? Experience. Medicine and experience. They still haven't got a measurement, do they? Not as far as I'm aware. Subjectivity measurement? That's correct. Right now you may be experiencing pain, but I can't go and find it, can I? The only way I know that you're experiencing pain is observationally, which may be vague, but you say, oh, that's based on experience. But there's really no measurement there. That doesn't mean it doesn't exist. We're all looking through lenses in other ways. That's correct. And here the benefit of the lenses that ought to be appreciated are the lenses that are provided from all the doctors who saw him triplet multiple times over an extended period of time, had the benefit of interpreting using the MRI, which showed the presence of problems at L5S1, disc protrusion, stenosis, the EMG reported pressure from the nerve. He comes in and complains about pain in his low back. To everybody who examined him with pain going down his leg, numbness in radiation, all of which was consistent with what the MRI and the EMG objectively showed, his statements to each of the physicians who examined him were consistent with those complaints. He consistently made the same complaints about pain and the degree of pain and what was causing the pain to each of the physicians who examined him and who treated him. Now, your argument has some intuitive appeal, but we generally don't decide cases on the basis of who has the greatest number of witnesses. You have Singh. You have a point, but unless you can point out some fundamental flaw on the basis of his opinion that undermines the entire opinion, you still start telling us we've got to weigh the evidence, which we don't do. What's wrong with Singh's opinion? Because I thought I had addressed it with respect to the tainted. The opinion is tainted because the basis upon which he ultimately made the conclusion that he had not suffered a work-related injury was these positive Waddell signs, and that's been discredited. By who was it discredited by? Did somebody testify in the record? No. It's undisputed that at the time that Triplett injured himself, he was performing a heavy-duty job. There's no evidence and no medical evidence whatsoever he had any kind of back pain or any kind of pain along the lines of what he later complained about afterwards. Dr. Singh's opinion also recognizes that there was some abnormality in the MRI. As I said, I think his reasoning for discounting or underplaying the MRI and totally discounting the EMG don't have a decent foundation whatsoever. But he still describes Triplett's condition, prognosis, as guarded. Although he concludes that there was no work-related injury, there's no evidence anywhere else in the record that contradicts all the testimony, all the reports from all the examining physicians that establish unanimously that he had indeed suffered a work-related injury on September 5th. Wade and Bolin have fact patterns that are very similar to the situation involving Triplett. There's an outlier opinion. There's unanimous agreement based on testing from treating physicians to the contrary, that the person had indeed suffered a disabling condition. On those two decisions, what was the commission's decision? Neither of those are workers' compensation cases. To that extent, there are members of this panel who have either authored or signed on to majority opinions in Nee, in Mlynarczyk, Kawa, and Dye, all of which employed the analysis from Wade and Bolin to point out that given the record that exists, a tainted outlier opinion in contrast to hundreds of pages of records from examining physicians, better substantiated, more complete, relying on objective evidence, consistency of statements from the injured person, and have concluded that the opposite conclusion was evident, indisputable, and plain based on the record that was placed before. That's the scope in which the commission's decision. That's correct. That's correct. And our position is that the same. That they went with a tainted opinion of Dr. Singh. That's correct. That's your argument. Yes. Did Singh explain the Waddell findings? Did he give any underlying rationale for that? No. And the commission doesn't either. The other two points the commission raised in this short justification for its decision, in a two-to-one decision, is that Triplett worked for a week in a heavy, demanding job in the aftermath of sustaining this injury. First of all, I don't believe that there's evidence to support that. Triplett went to chiropractor on four of the five days. The only day he apparently did go to work, from which there's clear evidence that he did work that day, was the Thursday, September 11th. He did some mopping when he goes to the chiropractor. You'll have time in reply. I'll let you go over. You'll have five minutes in reply. Thank you. Counsel, you may respond. Please proceed. May it please the Court. Good morning, Counsel. Justices, Chris Jarko on behalf of Chris Jarko, or on behalf of the FLE, R.I. Chavitz. Your Honors, we're here today to ask that you affirm the decision of the Illinois Workers' Compensation Commission as it's not against the manifesto of the evidence. The procedural history involved in this claim is quite complex. However, the legal principles that we're facing today are not. It seems like Your Honors are quite aware this is a claim that involves a classic battle of the experts, in which the Commission is charged with the specific task of reviewing the conflicting evidence, resolving disputes raised by the experts, and issuing a decision therefrom. So what's the conflicting evidence there? Well, on one hand, you have Dr. Singh, who will find that the claimant's current condition was not causally related to the September 2008 accident. And then on the other, you have that of Dr. Fisher and Dr. Newman, who find to the contrary. What was Singh's opinion based on? Was it primarily on the Waddell findings, or what was it based on? No. In fact, if you look at Dr. Singh's report on the very first page, it explains what records he reviewed under the history section. He also had an opportunity to review the actual MRI films, as well as take a physical examination of the claimant and take the claimant's history of … So what did he say about those objectives? The objective MRI? Your Honor? Well, you said objective. Let's take … Sure. Well, with respect to … Your point is trying to undercut the foundation of this one opinion by Dr. Singh, the conclusion, by saying that it was based upon a foundation of Singh. Absolutely so. It was a Waddell. Well, Dr. … Reliance on Waddell symptomology, exaggeration of symptoms. Well, the Waddell findings that Dr. Singh points out are pain with percussion … Let's just make it simple. Let's take … Your argument should be ignore Waddell. There's enough there. What's enough there, you would say, if we agreed with opposing counsel that Waddell testing or conclusions based on Waddell foundation is sand? Well, Dr. Singh had an opportunity to review the MRI as well as take that physical exam. So in that MRI, Dr. Singh finds that the MRI revealed a slight loss of disc signal intensity at L5-S1 with slight loss of disc height and minimal evidence of sensoroformal stenosis. So it's essentially degenerative findings. And Dr. Singh opined that when you take a look at that MRI and compare it to the claimant's physical examination, it was his opinion that the claimant's current condition was not cause-related to the September 2008 accident. So his opinion wasn't just based on Waddell. It was based on his objective interpretation of the MRI? That's correct. Yes, Judge. What do you mean Waddell … Well, his interpretation … His interpretation … Objective … His so-called objective interpretation. Well, it's not objective. It's interpretation of some … Correct. Yes. And I understand counsel's argument with respect to the Waddell findings, but that's an argument that needs to be raised at the commission level because it's the commission that determines credibility of the evidence and the credibility of the witnesses. The counsel cites to a study from Michigan State. Well, that should have been addressed at the commission level, not here. That was not in the record, was it, that study? No, it was not. There was no expert testimony to impeach the Waddell findings? Absolutely. So there's no evidence that even impeaches the credibility of those Waddell findings or the findings of Dr. Singh. There's differing opinions amongst the doctors, but that's what the commission's role is, is to assess weight to those varying degrees of interpretation and conclusions. In fact, the only actual causation assessment in the record contrary to Dr. Singh's is that of Dr. Newman's. And Dr. Newman is a doctor that examined the claimant in October 2008, and his report is as brief or more brief than that of Dr. Singh's. It's only a page and a half long. Dr. Newman says that he does not review any medical records and that his whole opinion is based on the history of the claimant that the claimant provides to him. Dr. Newman did not even review any diagnostic images. If you look at the treating surgeon, Dr. Fisher, there's no causation assessment in any of his records. The pain management physicians, Dr. Arian and Dr. Rosania, they mention a work injury, but there's not a specific causation assessment. They don't outline specifically how it's related to his work activities. And then Dr. Doblin, who the claimant apparently saw following the accident, his records are silent. So to say that you have a plethora of physicians that find in favor of a causally-related work accident, which conflict with that of Dr. Singh's, is not completely accurate. Now, with respect to the cases of Wade and Bolin that counsel raised, those cases stand for the proposition that reviewing courts need to review the record as a whole to determine whether sufficient evidence exists to support the administrative findings. So if you look at the decision of Wade, the reviewing courts found that the minority doctor's opinion was inconsistent with the record as a whole and other medical documents, and the same is true with Bolin. They don't simply stand for the proposition that because one side has more physicians than the other, then they must win. They simply stand for the point that the reviewing courts must review the record as a whole. Counsel, let me ask you this. Did the claimant have an abnormal EMG on December 4th, 2008? Yes, Judge. So what do you make of that? Well, Dr. Singh points out that EMGs can create a false positive when you combine them, when you analyze those with other objective findings, including the MRI as well as a physical examination. And there's no testimony that rebutts that opinion, and the commission agreed with him. So when you combine all the evidence together, one positive EMG is not, Dr. Singh did not find that it was sufficient to warrant the proposed surgery and fine for causation. So it's our position, Your Honors, that the record does contain sufficient evidence to support the commission's decision. We would ask that Your Honors affirm the commission's decision in its entirety. Thank you. Excuse me. Thank you, Counsel. Counsel, you may reply. Just a couple of points, Judge. The pain management doctors, the orthopedic specialists, the orthopedic surgeon who recommended surgery, all had the benefit of examining the MRI. In fact, the orthopedic surgeon had a complaint about the original interpretation, thought something was blurry or couldn't read it properly, so he went back and asked to see it and came back with an interpretation that the MRI was even more serious than was the case from the original interpretation. Secondly, the pain management doctors and everyone else concluded that Triplett had experienced a work-related injury because there was no other explanation for it. He worked without any problem, as far as the record shows, up to September 5th. Starting on September 8th, he immediately reported to work after the weekend, claimed that he had hurt himself at work on that Friday. And the rest of the medical record that developed from treating doctors consists of attempting to deal with the pain and discomfort he was experiencing through a progressive series of treatments, medication, chiropractic manipulation. When none of those things worked very well, he received a series of epidural spinal steroid injections. He went through extensive physical therapy and finally gets to the recommendation from Dr. Fisher at the conclusion of this trail saying that he needs surgery, to which Triplett testified that he would have undergone the surgery he had at that point. So none of those doctors who saw him on a regular basis over an extended period of time ever in any of those 200 plus pages of their reports made any reference whatsoever to symptom magnification or to some exaggeration or malingering as the basis for his pain. This presents the situation, when you look at the totality of the evidence in the record as a whole, you can't come to another conclusion other than to decide that he had indeed suffered a work-related injury. We raised as a legal error the Commission's erroneous interpretation of the preponderance of the evidence standard. And again, when you contrast the evidence that was offered on behalf of Triplett by his doctors who had treated him over the period of time, as opposed to this one opinion based on a one-time examination for less than an hour by someone who was brought in not to treat him but merely to evaluate him for purposes of his workers' compensation claim, it's impossible to conclude that the Commission fairly applied the preponderance of the evidence to the evidence that was presented to it. Thank you very much. Thank you, counsel, both for your arguments in this matter. We will be taking our advisement and the rest of this position shall issue. The Court will stand in brief recess.